ORIGINAL

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION



MAY 2 5 2001

CLERK, U.S. DISTRICT COURT

By _____

Deputy

| | | |
|---|---|---|
| **ALYSSA WRIGHT,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **BLYTHE NELSON, et al.** | § | **CA No. 3:99-CV-2522-D** |
| | § | |
| **Defendants** | § | |
| | § | |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION
## TO DESIGNATE EXPERT WITNESSES AND BRIEF IN SUPPORT

15

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATUTES AND REGULATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

SUMMARY OF MOTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    I.       Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    II.     Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

          A.    Plaintiff's Motion for Leave Should Be Denied As It Was Filed After the March 1, 2001 Motion Deadline . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

          B.    Plaintiff Should Not Be Permitted to Proceed with Her Belated Expert Designation and Disclosure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

# TABLE OF AUTHORITIES

## CASES

**Page**

*McCombs v. Allwaste Recovery Systems, Inc.*,
1999 WL 102816 at *1 (N.D. Tex. Feb 24, 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 6, 7

American Tourmaline Fields v. International Paper Co.
1998 WL 874825 at *1 (N.D. Tex. Dec. 7, 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

U.S. v. $9,041,598.68
163 F.3d 238 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Rushing v. Kansas City Southern Ry. Co.
185 F.3d 496, 509 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

Sierra Club, Lone Star Chapter v. Cedar Point Oil Co., Inc.
73 F.3d 546, 573 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Chilcutt v. United States
4 F.3d 1313, 1324 (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## STATUTES AND REGULATIONS

|  | **Page** |
|---|---|
| Fed. R. Civ. P. 16(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 1, 3, 4, 6 |
| Fed. R. Civ. P. 26(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 1 |
| Fed. R. Civ. P. 26(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 1 |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ALYSSA WRIGHT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:99-CV-2522-D |
| | § | |
| BLYTHE-NELSON, et al., | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION
## TO DESIGNATE EXPERT WITNESSES AND BRIEF IN SUPPORT

### SUMMARY OF MOTION

COME NOW Defendants Blythe-Nelson, a Texas General Partnership ("Blythe-Nelson"),

Blythe-Nelson, Inc. ("BNI"), Blythe-Nelson Management Services ("BNMS"), James L. Blythe

("Blythe"), Mart D. Nelson ("Nelson"), and Jeanette C. Bell ("Bell"), and submit this Response to

Plaintiff's Motion for Leave to Designate Experts ("Motion for Leave"). Defendants urge the Court

to deny the Motion for Leave on the following grounds.

### ARGUMENT AND AUTHORITIES

**I.      Factual Background**

I.      On December 15, 1999, this Court entered its Scheduling Order, pursuant to *inter alia*

Fed.R.Civ.P.16(b) and 26(f), setting the deadline for a party with the burden of proof on a claim to

designate expert witnesses and otherwise comply with Rule 26(a)(2) no later than August 1, 2000.

The deadline for designating rebuttal experts was scheduled for October 1, 2000. (Defendants'

Appendix to this Response ("Def. App.") at 1-3.)

II.     On December 8, 2000, the Court granted the joint motion of the parties to extend certain deadlines and continue the case from its then March trial setting to its present June 4, 2001 setting. (Def. App. at 4, 5.)  The *parties did not request, nor did this Court grant, an extension of time to designate expert witnesses. (Id.* at 4, 5.)  The parties did request an extension of time for filing motions not covered by other deadlines, and the Court granted their request, extending the motion deadline to March 1, 2001. (*Id.* at 6-11.)

III.    Plaintiff concedes that she had retained her expert economist prior to February 12, 2001, inasmuch as that expert prepared a damages report that the Plaintiff and her counsel had in their hands at the time of Plaintiff's February 12, 2001 deposition. (Motion for Leave, ¶1.4.)

IV.     Plaintiff also had been in touch with her expert psychologist prior to her February 12, 2001 deposition. Specifically, at that deposition, Plaintiff's counsel stated on the record that Plaintiff "*had talked* with somebody in California, right now for the purposes of consulting with that person, who is a licensed psychologist or psychiatrist." (Pl. App. at  22 (p.101, lines 7-10 of Plaintiff's deposition)(emphasis added).)[1]

V.      Plaintiff also clearly had retained her attorneys of record, lead counsel for which has been designated as an expert on attorneys' fees,  by the time they made a notice of appearance in this case, on or about December 8, 2000. (Def. App. at 12-15.)

VI.     Plaintiff did not file any type of motion by March 1, 2001 requesting leave to designate experts or make expert disclosures after the deadline for doing so had passed.

VII.    On May 4, 2001, only 31 days prior to the June 4 trial setting (Def. App. at 16), in violation of the Federal Rules of Civil Procedure and this Court's Scheduling Order, *and without first seeking*

---

[1]Plaintiff herself responded to the questions about whether she had seen or talked to anyone other than the consulting expert by clarifying that, "I didn't say that I had not talked to her." (Pl. App. at 22 (page 102, lines 18-22 of Plaintiff's deposition).)

*relief from them*, Plaintiff, for the first time, sought to designate and disclose expert witnesses on matters on which she has the burden of proof, to wit, lost wages, emotional suffering and attorneys' fees. (Def. App. at 17-19.) Significantly, Plaintiff sought relief from the expert designation and disclosure deadline *only after* Plaintiff was notified of Defendants' intent to file their Expedited Motion to Strike Plaintiff's Expert Designation and Disclosure and for Sanctions. (Def. App. at 20-24). Thus, Plaintiff did not filed the instant Motion for Leave until May 16, 2001-- almost two weeks *after* she actually made her expert designation and disclosure.

## II.    Argument

Plaintiff's Motion for Leave is the very embodiment of the cliche "too little, too late," as it both inadequately addresses why she failed to comply with the deadlines for expert designation and disclosure and for filing a motion seeking relief from that deadline, and comes *after* she has done what she belatedly seeks leave to do. This Court should not countenance Plaintiff's utter disregard for its Orders.

### A.    Plaintiff's Motion for Leave Should Be Denied as It Was Filed after the March 1, 2001 Motion Deadline

Plaintiff did not comply with the March 1, 2001 deadline for filing her Motion for Leave, but waited until May 16, 2001 to seek an extension of the expert disclosure and designation deadline. While Plaintiff cites case law setting out the standard for allowing the late designation of experts, she fails to address the first legal hurdle to jump – showing good cause under Fed. R. Civ. P. 16(b) to support consideration of the late-filed Motion for Leave itself. In other words, as this Court has explained in analogous circumstances, before the Court may even address the substantive issue of late-designated experts, the Court *first* should address whether it will consider Plaintiff's late-filed Motion for Leave. *See McCombs v. Allwaste Recovery Systems Inc.*, 1999 WL 102816 at *1(N.D.

Tex. Feb. 24, 1999)(once a deadline set pursuant to Fed. R. Civ. P. 16(b) has expired, a court considering a request to act subsequent to that deadline "must first determine whether to modify the scheduling order under the standards of Rule 16(b)"; the court considers the substantive standards for the sought action "only if the movant satisfies the requirements of Rule 16(b))(citations omitted). As is demonstrated below, Plaintiff cannot pass the initial hurdle of showing good cause for allowing consideration of her late-filed Motion for Leave.

It is clear that Plaintiff and her counsel knew who their experts were at least *as early as February 12,* 2001. By that date, Plaintiff and her counsel had received their expert economist's report, had gotten in touch with their expert psychologist, and knew who their lead counsel was. Thus, Plaintiff and her counsel certainly had enough information about their experts available to them *before* the March 1, 2001 motion deadline to have filed some type of motion seeking leave to belatedly designate experts. However, they did not do so.

Plaintiff offers *no* explanation for not having complied with the initial August 1, 2000 expert designation and disclosure deadline,[2] and little in the way of an explanation for not having met the March 1, 2001 motion deadline. Moreover, the little that Plaintiff does offer is lacking in both forthrightness and persuasiveness. For example, while Plaintiff's counsel did provide the economic analysis to Defendants on February 12, 2001, Plaintiff's counsel notably neglects to point out to the Court that there is nothing on the analysis itself, and nothing stated to Defendants by Plaintiff or her counsel, that indicated that the analysis was prepared by an expert. Rather, as the analysis itself reflects (Pl. App. at 5-18), the *only* name on the report is "Godwin White & Gruber, PC" which is

---

[2] As Defendants argue in their Expedited Motion to Strike Plaintiff's Expert Designation and Disclosure and for Sanctions ("Motion to Strike"), on file with the Court, Plaintiff's claims for economic damages, damages for pain and suffering, and attorneys' fees have been pending since the inception of this lawsuit two years ago, and could long ago have been addressed through the retention of experts. (Def. App. at 25-35.)

the name of *Plaintiff's counsel's law firm*. Similarly, the settlement demand letter from Plaintiff's counsel says *nothing* about any expert. (Pl. App. at 3-4.) Further, Plaintiff neglects to inform the Court that at her deposition, Plaintiff could not identify who prepared the analysis and Plaintiff's counsel did not step in to explain that it was prepared by an expert. (Def. App. at 44, 45.) Thus, Defendants had absolutely no way of knowing that an outside expert, rather than Plaintiff's counsel themselves, had prepared the damages analysis.

As for the expert psychologist, Plaintiff's counsel specifically and adamantly thwarted Defendants' attempt to learn whether there was an expert in the offing, by instructing Plaintiff not to answer questions relating to the psychological counselor whom she had contacted on the grounds that this person was a consulting expert only. (Pl. App. at 21-22.) (Def. App. 36-43.) Plaintiff's counsel now tells the Court that at the deposition, he "informed counsel for Defendant that Plaintiff was talking with a licensed psychologist or psychiatrist but that individual was a consulting expert *pending completion of her evaluation of Plaintiff*." (Motion for Leave, ¶1.5, emphasis added.) A simple comparison of this statement to the deposition transcript itself (Pl. App. at 21-22) shows that Plaintiff's counsel *never* said *anything* about a pending evaluation or changing the consulting expert's status to that of a testifying expert after an evaluation. It is outrageous that Plaintiff's counsel now tries to sell his statements at the deposition as some kind of notice to Defendants that the (unnamed) psychologist/psychiatrist might become a testifying expert.

The truth is that at no time prior to her May 4, 2001 Expert Designation and Disclosures did Plaintiff's counsel ever clarify to Defendants that the consulting expert had become a testifying expert, despite the fact that the expert had a full-blown interview with the Plaintiff as early as February 28, 2001 (Pl. App. at 48) -- well before the March 1, 2001 deadline for filing motions. That Plaintiff waited until after March 1, 2001 to require that the expert complete her evaluation and

report (as Plaintiff contends in her Motion for Leave, ¶2.4) is not an adequate excuse for not having sought leave by March 1, 2001 to designate her as an expert. In other words, even giving the benefit of the doubt to Plaintiff and her counsel that they did not know for sure that the psychologist would be a testifying expert by March 1, 2001, they certainly had enough information by March 1, 2001 to know that there was a strong chance that the psychologist would be a testifying expert, and they could and should have sought by March 1, 2001 to have leave to belatedly designate her as an expert if that chance became a reality, as it did.

With regard to designating lead counsel as an expert on attorneys' fees, Plaintiff's only attempt at an explanation for the delay in designation was that they had produced the attorneys' fee agreement. (Motion for Leave, ¶1.6.) How that was supposed to put Defendants on notice that Plaintiff's lead counsel would be testifying as an expert (as opposed to a fact witness about fees incurred) is anyone's guess.

In view of these facts, Plaintiff has not provided the Court with a sufficient basis to allow her to proceed with her Motion for Leave. When confronted with scheduling order deviation requests in other cases, this Court has found that the "good cause" requirement of Fed. R. Civ. P. 16(b) should be narrowly construed. Specifically, in *McCombs*, 1999 WL 102816 at *2, this Court held that "good cause" for extending scheduling order deadlines is not met by a showing of mere inadvertence by the moving party and non-prejudice to the opposing party; "instead, the movant may demonstrate 'good cause' only by showing that, despite his diligence, he could not have reasonably met the scheduling deadline." Citing *American Tourmaline Fields v. International Paper Co.*, 1998 WL 874825 at *1 (N.D. Tex. Dec. 7, 1998).

Under this standard, Plaintiff cannot show good cause for considering her Motion for Leave which was filed well after the March 1, 2001 deadline. The facts recited above demonstrate that

Plaintiff and her counsel knew as early as mid-February, 2001 that they would have a damages expert and attorneys' fees expert, and likely a testifying expert psychologist as well. Plaintiff has failed to demonstrate that she could not have met the March 1, 2001 deadline for filing a motion for leave to belatedly designate and disclose experts. The fact is that Plaintiff and her counsel could and should have filed such a motion on or before the March 1, 2001 motion deadline, and there is no good cause for their failure to do so. Thus, the Court should deny the Motion for Leave for failure to meet the Rule 16(b) standard, and need not even reach the issue of whether to allow the late designation of experts. *See McCombs*, 1999 WL 102816 at *1.

> B.    Plaintiff Should Not Be Permitted to Proceed with Her Belated Expert Designation and Disclosure

Even if the Court chooses to reach the issue of allowing Plaintiff's belated expert designation and disclosure, Plaintiff's Motion still must fail under the standard for considering that issue. Although Defendants have addressed that issue in their Motion to Strike, Defendants will respond herein to points raised in Plaintiff's Motion for Leave.

First, Plaintiff has not provided an adequate explanation for her belated expert designation and disclosure. As demonstrated above, the conduct of Plaintiff and her counsel in no way put Defendants on notice that Plaintiff had retained three testifying experts; rather, Defendants were presented with this information only by the May 16, 2001 Expert Designation and Disclosure. Further, Plaintiff cannot rely on an informal letter about cooperating in the mutual taking of discovery to explain why she did not designate her experts on time or file a motion for leave on time. A simple reading of the January 11, 2001 letter between counsel cited by Plaintiff (Motion for Leave, ¶2.2) reveals that the letter said *nothing* about extending the expert designation and disclosure deadline *or* the March 1, 2001 deadline for filing motions (such as motions for leave). Further,

Plaintiff took no steps to have that letter formalized into an order by the Court. In addition, prior to the March 1, 2001 motion deadline, Plaintiff had been put on notice by Defendants that they did not consider that letter to be a blanket approval to do whatever Plaintiff wanted despite the Court-ordered deadlines.[3] For example, Plaintiff sent a letter on February 27, 2001 to Defendants seeking their agreement to utilize depositions from another lawsuit in this lawsuit. (Def. App. at 78-80.) Defendants responded that they would not so agree. Thus, on March 1, 2001, Plaintiff filed a Motion for Utilization of Prior Depositions. (*Id.* at 81-85) This example illustrates both (1) that Plaintiff knew that, despite the letter with Defendants' counsel, not every act of discovery or conduct Plaintiff wanted to engage in was covered by that letter and that they would still have to seek Defendants' agreement to certain conduct, and (2) that Plaintiff needed to file her motion to engage in certain conduct *by the March 1, 2001 deadline*. It follows, then, that Plaintiff and/or her counsel consciously chose which issue they would address by motion and which they would not by the March 1, 2001 deadline. In sum, Plaintiff has not offered a legitimate or persuasive explanation for her belated expert designation or disclosure.[4]

Second, Plaintiff's Motion for Leave repeatedly refers to the factor of prejudice, arguing that there would be no prejudice to Defendants by the allowance of late-designated experts. However, Plaintiff's argument is both misplaced and untrue. As the case law makes clear, the absence of

---

[3] Plaintiff appears to imply in ¶2.2 of her Motion for Leave that she cooperated in providing discovery pursuant to the January letter, but that Defendants did not. Such implication is misleading, as both sides allowed post-deadline depositions of the parties. For instance, Defendants presented Mr. Blythe and Mr. Nelson for their depositions in February, 2001 (Def. App. at 46, 47) and agreed to produce Ms. Bell for her deposition in April, which Plaintiff's counsel canceled the morning of the depositions (Def. App. at 48-53).

[4] The case cited by Plaintiff, *U.S. v. $9,041,598.68*, 163 F.3d 238 (5th Cir. 1998), is quite different from the instant case, in that (1) the late-designated witnesses were fact, not expert, witnesses; (2) the reasons for the late designation were fear for the safety of the witnesses, as the case involved drug trafficking and the previous murder of many co-workers of one of the witnesses, and difficulty in obtaining the witnesses' entry into the country from Mexico; and (3) Minimal prejudice to the opposing party. *Id.* at 252, n.10 & 253.

prejudice to the party opposing the late designation is not a determinative factor in whether to strike late-designated experts. *See, e.g., Rushing v. Kansas City Southern Ry. Co.,* 185 F.3d 496, 509(5th Cir. 1999). Rather, even in the absence of extreme prejudice, the court may deny the request for late-designation of experts when the circumstances so warrant. *Id.*

Further, as fully explained in their Motion to Strike, Defendants *would* be significantly prejudiced by the late designation and disclosure of experts. Defendants have otherwise completed discovery in this case, and until the recent postponement of the trial setting by the Court, and the corresponding postponement of the May 21, 2001 pretrial deadlines, Defendants were ready to submit all of their pretrial materials (*see, e.g.,* Def. App. at 54-70). To have to undertake the host of activities that would be required if Plaintiff were allowed to proceed with expert designations and disclosures at this late date (such as evaluating Plaintiff's materials, searching for and retaining their own consulting and/or testifying experts, deposing Plaintiff's experts, moving for an evaluation of Plaintiff under Rule 35, evaluating and preparing *Daubert* challenges, reassessing their trial strategy, and revising all of their pretrial materials that were ready for submission on May 21, 2001) would be extremely burdensome, costly and prejudicial to Defendants. *See, e.g., Rushing,* 185 F.3d at 509(party would be prejudiced by needing time to research the witnesses, review the materials, and take steps to obtain responsive evidence). Further, putting that burden on Defendants effectively rewards Plaintiff and her counsel's inexcusable, dilatory conduct, which, as argued in Defendants Motion to Strike, should instead be sanctioned.

With regard to the other two factors cited by Plaintiff, *i.e.,* the importance of the proposed testimony and the possibility of a continuance, the Court should exercise its discretion in favor of denying Plaintiff's Motion for Leave. Plaintiff's Motion for Leave does not articulate any need for the proposed expert testimony, except to summarily state that it would be of "benefit...to the trier of

fact." (Motion for Leave, ¶2.7). The fact is that Plaintiff does not need the experts to proceed with her case. As for attorneys' fees, pursuant to the Court's June, 28, 2000 Trial Setting Order, ¶15, the Court will be hearing that matter and can hear the fact testimony of counsel and take judicial notice of what is reasonable and necessary. As for emotional and economic damages, Plaintiff can rely simply on her own testimony and/or the various documents exchanged in discovery (*e.g.*, W-2s and personnel records (Def. App. at 71-77) to try to prove her alleged damages. Further, even if the expert testimony were of great importance to Plaintiff, that factor "'cannot singularly override the enforcement of local rules and scheduling orders.'" *Rushing*,185 F. 3d at 509 (citations omitted).

With regard to the factor of whether a continuance could cure the prejudice to Defendants, as argued above, it would not. Further, as the Fifth Circuit in *Rushing* held, while a continuance might ameliorate the prejudice, "prejudice is not a strict requirement" for striking late-designated experts and "a continuance would have failed to sanction" the offending party. 185 F. 3d at 508, citing *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co., Inc.*, 73 F.3d 546, 573 (5th Cir. 1996) (continuance "would neither punish [the offender] nor deter similar behavior"); and *Chilcutt v. United States*, 4 F. 3d 1313, 1324 U.30 (5th Cir. 1993) (goal of sanctioning is to punish infracting party and deter similar behavior). Notably, the Fifth Circuit has upheld as a proper exercise of discretion a district court's refusal to permit late-designated experts even where less than all of the relevant factors weigh in favor of such. *See, e.g., Rushing.* 185 F.3d at 509-510 (refusing to disturb trial court's discretion in striking late-designated expert despite importance of expert's testimony to party offering same).

In sum, Plaintiff's should not be permitted to proceed with her expert designations. From the outset of this case, Plaintiff has pled emotional injuries and sought economic damages and attorneys' fees. There is no new issue that has arisen that could not have been complied with within the

Scheduling Order deadlines, and Plaintiff offers no explanation for not complying with the August, 2000 deadline. Moreover, Plaintiff, in the late designation of her experts, did not even attempt to comply with the "good cause" exception to Rule 16(b); rather, in defiance of the Federal Rules and this Court's Orders, brashly served Defendants with her expert disclosures on May 4, 2001 as if leave from the Court were not even an issue. This Court should not put up with, let alone permit, such a flagrant disregard of the rules and the Court's Orders by Plaintiff, much less to the great prejudice of Defendants and the unwarranted benefit of Plaintiff.

Therefore, Defendants urge the Court to deny Plaintiff's Motion for Leave, and for other such relief as the Court deems appropriate, including the relief requested in Defendants Motion to Strike Plaintiff's Expert Designation and Disclosure and for Sanctions, as well as attorneys' fees incurred in filing this Response.

Respectfully submitted,

John E. Agnew
State Bar No. 00933000
Rebecca A. Singer
State Bar No. 18342398
BURLESON, PATE & GIBSON, L.L.P.
2414 N. Akard, Ste. 700
Dallas, TX 75201
Telephone: 214/871-4900
Telecopy: 214/871-7543
ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served upon all counsel, via certified mail, return receipt requested, to Plaintiff's and Co-Defendants' counsel, on this 25 day of May, 2001.

John E. Agnew

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION
TO DESIGNATE EXPERT WITNESSES AND BRIEF IN SUPPORT – Page 11**